1

1          UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF MISSISSIPPI
2              GREENVILLE DIVISION

3  UNITED STATES OF AMERICA              PLAINTIFF

4  VS.                               NO. 4:21-CR-12

5  ELIJAH RAYMOND ENGRAM                DEFENDANT

6

7      CHANGE OF PLEA HEARING BY VIDEOCONFERENCE

8

9       BEFORE HONORABLE DEBRA M. BROWN
       CHIEF UNITED STATES DISTRICT JUDGE
10

11            Greenville, Mississippi
              September 22, 2021
12

13  APPEARANCES:

14  For the Government:  JULIE HOWELL ADDISON, ESQUIRE
                        U.S. ATTORNEY'S OFFICE
15                      900 Jefferson Avenue
                        Oxford, Mississippi  38655
16

17  For the Defendant:  MERRILL K. NORDSTROM, ESQUIRE
                        FEDERAL PUBLIC DEFENDER'S OFFICE
18                      1200 Jefferson Avenue
                        Oxford, Mississippi  38655
19

20  Court Reporter:     BRENDA D. BLACKBURN, RPR, CCR #1087
                        FEDERAL OFFICIAL COURT REPORTER
21                      305 Main Street
                        Greenville, Mississippi  38701
22

23

24

25

1          (CALL TO ORDER OF THE COURT.)

2          **THE COURT:**  Good morning.  Be seated, please.

3          Our first case today is United States of America

4    versus Elijah Raymond Engram.  This is a change of plea

5    hearing.  It is taking place pursuant to videoconferencing

6    based on Mr.~Engram's consent.

7          Who is here as counsel for the government?

8          **MS. ADDISON:**  Good morning, Your Honor.  Julie

9    Addison on behalf of the United States.

10         **THE COURT:**  Good morning.

11         And counsel for the defendant?

12         **MS. NORDSTROM:**  Good morning, Your Honor.  Merrill

13   Nordstrom.

14         **THE COURT:**  Good morning.

15         And would our representative from probation please

16   identify herself.

17         **PROBATION OFFICER:**  Kimberlee Hatter, Your Honor.

18   I apologize for the delay.  I had a hard time getting

19   connected.  Clay had to come in and get me connected to the

20   system and Jabber.  I do apologize to the Court.

21         **THE COURT:**  No worries.  We just weren't sure where

22   you were.  You saw I sent you an e-mail only because I

23   didn't even know that much at the time.  So glad to have you

24   join us.

25         **PROBATION OFFICER:**  Okay.  I apologize.

1     THE COURT:  Can everyone hear me?  Okay, I presume

2  you will, unless you tell me otherwise.

3     We will start then by administering the oath to our

4  defendant.

5     COURTROOM DEPUTY:  Raise your right hand, please.

6     Mr.~Engram, can you raise your right hand?

7     (OATH ADMINISTERED BY COURTROOM DEPUTY.)

8     THE COURT:  You may put down your hand, sir.

9     Sir, are you Elijah Raymond Engram?

10    THE DEFENDANT:  Yes, ma'am.

11    THE COURT:  Is that your full legal name,

12 Mr.~Engram?

13    THE DEFENDANT:  Yes, Your Honor, it is.

14    THE COURT:  Do you understand, Mr.~Engram, that

15 you're now under oath and if you answer any question I ask

16 you falsely, your false answer may be used against you in a

17 prosecution for perjury or making a false statement?

18    THE DEFENDANT:  Yes, ma'am.

19    THE COURT:  Do you understand you have the right to

20 remain silent and not answer any of the Court's questions?

21    THE DEFENDANT:  Yes, ma'am.

22    THE COURT:  Mr.~Engram, you heard me say at the

23 beginning that this hearing was taking place pursuant to

24 videoconferencing and that was based upon your consent.  The

25 consent I was referring to is a written document that was

4

1    filed on the docket in this case in which you waived your

2    right to an in-person hearing and consent to

3    videoconferencing.  Are you aware of what document I'm

4    referring to?

5            **THE DEFENDANT:**  Yes, Your Honor.

6            **THE COURT:**  Now, I know we're appearing by

7    videoconferencing, but I need to ask, to the extent that

8    that document shows that you signed it -- you, yourself,

9    signed it, can you confirm that you did indeed sign that

10   document?

11           **THE DEFENDANT:**  Yes, Your Honor, I did indeed sign

12   the document.

13           **THE COURT:**  Did you have the opportunity to speak

14   with your attorney about waiving your right to an in-person

15   hearing and proceeding by videoconferencing before you

16   signed the document?

17           **THE DEFENDANT:**  Yes, Your Honor.

18           **THE COURT:**  For purposes of our record on this

19   hearing today, Mr.~Engram, do you waive your right to an

20   in-person hearing and consent to this hearing proceeding by

21   videoconferencing?

22           **THE DEFENDANT:**  Yes, Your Honor.

23           **THE COURT:**  Now, Mr.~Engram, if at any point during

24   this hearing you change your mind and decide that you want

25   an in-person hearing, just get my attention any way you can

5

1  immediately, and we will set it for an in-person hearing.

2  Do you understand?

3          **THE DEFENDANT:**  Yes, ma'am.

4          **THE COURT:**  Now, you see as well that I'm wearing a

5  mask.  Again, I don't need to tell you-all why, I'm sure.

6  But I know sometimes it interferes with whether or not you

7  can hear me.  So, if at any point you can't hear me, please

8  again immediately stop me and let me know, and we will

9  remedy that as soon as we can.

10          Mr.~Engram, I've been advised that you now wish to

11  plead guilty to Count 2 of the indictment.  Is that correct?

12          **THE DEFENDANT:**  Yes, Your Honor.

13          **THE COURT:**  And I understand it's a conditional

14  plea to the extent that you reserve your right to appeal the

15  ruling on the motion to suppress that I made.  Is that

16  right?

17          **THE DEFENDANT:**  Yes, Your Honor.

18          **THE COURT:**  I'm sorry.  Would you say that again,

19  sir.

20          **THE DEFENDANT:**  Yes, Your Honor.

21          **THE COURT:**  Okay.  Thank you.

22          Mr.~Engram, I also understand that this conditional

23  plea will be pursuant to a written plea agreement with the

24  government.  Is that right?

25          **THE DEFENDANT:**  Yes, Your Honor.

6

1        **THE COURT:**  I have a number of questions to ask you

2   then, Mr.~Engram.  The goal of my questions are to make sure

3   that you are fully informed of your rights and that you

4   understand your rights in this proceeding.  So it is very

5   important that you understand all of the questions that I

6   ask.  If you do not understand a question, let me know and I

7   will clarify it.  Also, although we are proceeding by

8   videoconferencing, we do have the ability to allow you to

9   speak privately with your attorney if you wish.  So if there

10  is any point during this hearing you would like to speak

11  with your attorney, and of course, if your attorney would

12  like to speak with you, we will have everyone else drop off

13  so you can have that private conversation.  But as with the

14  other things I've mentioned, you have to let me know that

15  that is something you want to do; get my attention any way

16  you can.  All right?

17        **THE DEFENDANT:**  Yes, ma'am.

18        **THE COURT:**  Mr.~Engram, can you tell me first how

19  old you are?

20        **THE DEFENDANT:**  I'm 61.

21        **THE COURT:**  What is the highest level of schooling

22  you've completed?

23        **THE DEFENDANT:**  Eleventh grade.

24        **THE COURT:**  Say that again, please, sir.

25        **THE DEFENDANT:**  I think it was eleventh grade.

1       **THE COURT:** Okay. So you didn't get a high school

2  diploma?

3       **THE DEFENDANT:** No, I did not.

4       **THE COURT:** And you've at no point taken any type

5  of course where you would obtain a diploma equivalent, like

6  a GED?

7       **THE DEFENDANT:** Uh, no, Your Honor. I think back

8  then I signed up for the class but for some odd reason I

9  didn't attend.

10       **THE COURT:** Okay. Mr.~Engram --

11       **THE DEFENDANT:** I can't remember because it's been

12  so long ago.

13       **THE COURT:** That's all right. Have you consumed

14  any medication, drugs, alcohol, or any other substance that

15  may interfere with your ability to understand things and

16  what will happen during this hearing?

17       **THE DEFENDANT:** No, Your Honor.

18       **THE COURT:** Is there any medication that you're

19  prescribed to take on a regular basis?

20       **THE DEFENDANT:** No, Your Honor.

21       **THE COURT:** Have you ever been treated or

22  hospitalized for an addiction to drugs?

23       **THE DEFENDANT:** No, Your Honor. But I have

24  received drug and alcohol treatment.

25       **THE COURT:** You have received drug and alcohol

8

1 treatment.  When was the last time that you received such

2 treatment?

3        **THE DEFENDANT:**  I entered a program in 2003, and it

4 lasted -- I mean, periodically, I still -- when I visit

5 Jackson, I still go to a AA meeting.

6        **THE COURT:**  The treatment you referred to, though,

7 was that an outpatient treatment?

8        **THE DEFENDANT:**  Well, it was out -- I had a -- I

9 signed myself into a treatment center.

10        **THE COURT:**  Okay.  Now that --

11        **THE DEFENDANT:**  It was a 105-day program.  After

12 the program, I was given the option to stay a little longer

13 or discharge.  I chose to discharge without having secondary

14 treatment.  And I come to the conclusion less than a year

15 later that I really wasn't ready at that time.  Not because

16 I continued to use drugs.  It was because I wanted to change

17 my way of life.  I wanted to change.  I wanted to not use

18 drugs.  So I checked myself again into a secondary

19 treatment.  Which it gave me the opportunity to reacquaint

20 myself with the living conditions of the outside world, you

21 know, without drugs and alcohol.  And I think that lasted --

22 that lasted, I think, four years in that facility.  And

23 during that time, I regained my footings as far as society.

24 And I continued to not use drugs until today.

25        **THE COURT:**  Until today?  You said --

1    **THE DEFENDANT:**  I mean, until --

2    **THE COURT:**  -- that you --

3    **THE DEFENDANT:**  No, I haven't used drugs until now

4    -- since.

5    **THE COURT:**  Okay, you -- that's what I wanted you

6    to clarify.  Very good.

7    **THE DEFENDANT:**  Yes, ma'am.

8    **THE COURT:**  And so you said you also have had some

9    -- you go to AA meetings?

10    **THE DEFENDANT:**  Yes, ma'am.

11    **THE COURT:**  And when was the last AA meeting that

12    you went to?

13    **THE DEFENDANT:**  I've been incarcerated since May

14    the 25th, and at least once a month before that.  Like,

15    during the first of the month, I normally go to a meeting.

16    **THE COURT:**  So alcohol abuse is something that you

17    deal with still even today?

18    **THE DEFENDANT:**  No.  No, ma'am.  Not necessarily

19    that part of it.  I wouldn't say I'm cured, because you

20    never get cured.  I mean, anything can happen.  But I'm

21    still practicing my sobriety.

22    **THE COURT:**  Very good.

23    Mr.~Engram, have you been treated or hospitalized

24    ever for any mental or emotional illness?

25    **THE DEFENDANT:**  No, Your Honor.

10

1    **THE COURT:** And do you have any physical or mental

2  condition that would prevent you from hearing what is going

3  to happen here today or from understanding the consequences

4  of a guilty plea?

5    **THE DEFENDANT:** No, Your Honor.

6    **THE COURT:** I do find then that you are competent

7  to enter a plea in this case.

8    Next, I'm going to ask you some questions about

9  your legal representation before we get deep into this

10  hearing.

11    Your attorney, Ms.~Nordstrom, is there with you.  I

12  have a simple three questions.  But if you need to

13  elaborate, please do so.  First one, are you satisfied with

14  your attorney's representation of you?

15    **THE DEFENDANT:** I'm deeply satisfied with my

16  representation.

17    **THE COURT:** Do you believe that your attorney has

18  represented your best interests in this case?

19    **THE DEFENDANT:** Yes, Your Honor.

20    **THE COURT:** And have you had enough time to speak

21  with your attorney about your case and have your attorney

22  answer any and all questions you had about your case?

23    **THE DEFENDANT:** Yes, Your Honor, I have, when

24  possible to contact her from being incarcerated.  Yeah, I

25  have.

11

1          **THE COURT:**  Very good.

2          **THE DEFENDANT:**  Yeah, I have been.

3          **THE COURT:**  Very good, sir.

4          We're going to turn next then, Mr.~Engram, to the

5     indictment pending against you in this case.  To the extent

6     the Court's been advised that you wish to plead guilty to

7     Count 2, I wanted to summarize what that count charges.

8          Count 2 charges you with possessing a firearm as a

9     felon in violation of 18 U.S.C. §922(g).  And again, that

10    was just a summary of the charges in the indictment,

11    Mr.~Engram.  Would you like to have the indictment read or

12    do you waive reading of the indictment?

13         **THE DEFENDANT:**  Your Honor?

14         **THE COURT:**  Do you want me to repeat the question?

15         **THE DEFENDANT:**  Yes, Your Honor.

16         **THE COURT:**  Would you like to have the Court read

17    the indictment, or do you waive -- in other words, choose

18    not to have the Court read the indictment?

19         **THE DEFENDANT:**  Well, I wish the Court not read it,

20    Your Honor.

21         **THE COURT:**  Okay.  Thank you, sir.

22         It is important to the Court, Mr.~Engram, that you

23    have indeed read the indictment and discussed it with your

24    attorney.  Have you done so?

25         **THE DEFENDANT:**  Yes, Your Honor.

12

1          **THE COURT:**  And are you fully aware of what you're

2     charged with in Count 2?

3          **THE DEFENDANT:**  Yes, Your Honor.

4          **THE COURT:**  With respect to Count 2, Mr.~Engram,

5     there are certain elements of proof associated with it which

6     if your case went to trial, the government would have to

7     prove against you beyond a reasonable doubt before you could

8     be found guilty.  And for purposes of our record today, I'm

9     going to ask the government's attorney to state those

10    elements.

11         Please do so, Ms.~Addison.

12         **MS. ADDISON:**  Yes, Your Honor in order to prove

13    Mr.~Engram guilty of possession of a firearm by a convicted

14    felon as charged in Count 2 of the indictment, the

15    government would have to prove with legal and competent

16    evidence each of following elements beyond a reasonable

17    doubt.

18         First:  That the defendant possessed a firearm as

19    charged.

20         Second:  That before the defendant possessed the

21    firearm, the defendant had been convicted in a court of a

22    crime punishable by imprisonment for a term in excess of one

23    year, that is, a felony offense.

24         Third:  That the defendant knowingly possessed the

25    firearm as a prior convicted felon.

1      And fourth:  That the firearm possessed had

2  traveled in interstate or foreign commerce, that is, before

3  the defendant possess the firearm, it had traveled at some

4  time from one state to another or between any part of the

5  United States and any other country.

6      **THE COURT:**  Having heard those elements,

7  Mr.~Engram, do you have any questions about them?

8      **THE DEFENDANT:**  No, Your Honor.

9      **THE COURT:**  Do you have any questions about the

10  nature of the charges in this case against you as to

11  Count 2?

12      **THE DEFENDANT:**  No, Your Honor.

13      **THE COURT:**  Next, Mr.~Engram, I'm going to state

14  the maximum possible penalties applicable to Count 2.  And

15  they are as follows:

16      Imprisonment for 10 years; if you're classified as

17  an armed career criminal, the term of imprisonment is not

18  less than 15 years; no more than life, a fine of $250,000,

19  supervised release after imprisonment for three years, and a

20  special assessment of $100.

21      If you plead guilty to Count 2, Mr.~Engram, and the

22  Court accepts your plea, I'm going to sentence you at some

23  point in the future.  Do you understand that if you are

24  sentenced to serve time in prison, you may be subject to a

25  term of supervised release after you've been released from

14

1 prison?

2         **THE DEFENDANT:** Yes, Your Honor.

3         **THE COURT:** Do you understand that if you violate

4 one or more of the conditions of supervised release in that

5 instance, you may be returned to prison for all or part of

6 the supervised release period?

7         **THE DEFENDANT:** Yes, Your Honor.

8         **THE COURT:** Do you have any questions about the

9 maximum possible penalties?

10         **THE DEFENDANT:** Do I have any questions about the

11 maximums? No, Your Honor, I don't.

12         **THE COURT:** And do you understand all of the

13 possible penalties?

14         **THE DEFENDANT:** Yes.

15         **THE COURT:** I next then, Mr.~Engram, will ask the

16 government's attorney to state the facts that the government

17 would be prepared to prove against you if your case went to

18 trial.

19         Ms.~Addison, would you please advise of the

20 government's evidence against Mr.~Engram.

21         **MS. ADDISON:** Yes, Your Honor.

22         Were the case to go the trial, the government would

23 expect to prove the following:

24         That Elijah Engram is a convicted felon, having

25 most recently been convicted of embezzlement out of Madison

1  County, Mississippi on August the 28th, 2017, which is a

2  crime punishable by more than one year in prison.

3          On December 10, 2019, Special Operations

4  Investigators with the Greenville Police Department executed

5  a search warrant on a residence located at 212 North Seventh

6  Street in Greenville, Mississippi.  Officers determined that

7  four males lived in the rooming house including Elijah

8  Engram.  Inside Mr.~Engram's bedroom investigators located a

9  black Jimenez Arms .22, which is a .22 L.R. caliber pistol,

10  under the air-conditioning window unit.  A fellow boarder in

11  the residence corroborated that Engram kept a firearm.

12  Mr.~Engram waived his Miranda warning rights and stated that

13  he knew the firearm was present in the room because he had

14  previously placed the firearm in the window unit of his

15  room.

16          The government would show that the subject firearm

17  had been manufactured in a state other than Mississippi and

18  therefore, had previously traveled in interstate commerce to

19  arrive in the state of Mississippi.

20          And the government would finally show that these

21  events occurred in Washington County, which lies within the

22  Northern District of Mississippi.

23          **THE COURT:**  Mr.~Engram, did you hear and understand

24  the government's evidence against you as just stated?

25          **THE DEFENDANT:**  Yes, Your Honor.

1     **THE COURT:** Is everything that was said about you

2  and about your conduct true and correct?

3     **THE DEFENDANT:** Yes, Your Honor.

4     **THE COURT:** Will you be pleading guilty here today,

5  Mr.~Engram, freely and voluntarily with full knowledge of

6  the charges because you are in fact guilty?

7     **THE DEFENDANT:** Yes, Your Honor.

8     **THE COURT:** Has anyone threatened you or in any way

9  attempted to force you to plead guilty?

10     **THE DEFENDANT:** No, Your Honor.

11     **THE COURT:** The Court finds then that there is a

12  factual basis for you to enter your plea here today.

13     Regarding the plea agreement between Mr.~Engram and

14  the government, Ms.~Addison, would you please state its

15  substance for our record.

16     **MS. ADDISON:** Yes, Your Honor.

17     The United States Attorney proposes to the Court a

18  plea agreement to be filed in this cause under Rule 11(c) of

19  the Federal Rules of Criminal Procedure, and the defendant

20  has read and understands fully this plea agreement and

21  approves the agreement realizing of course that it's subject

22  to acceptance or rejection by the Court.

23     That plea agreement is that Mr.~Engram agrees to

24  enter a conditional plea of guilty under oath to Count 2 of

25  the indictment which is being, of course, gone over by the

17

1    Court.  That conditional plea relates to the defendant

2    reserving his right to appeal the ruling issued by the Court

3    denying his motion to suppress.

4          The United States agrees not to charge the

5    defendant with any other offenses arising out of this

6    charge, but that agreement does not bind any other

7    prosecuting authority of any state or other federal

8    district, nor does it bind the Attorney General of the

9    United States with regard to any matter criminal, civil, or

10    federal tax laws.

11          If the defendant violates the agreement, all

12    statements made pursuant hereto will be admissible against

13    the defendant who waives the provisions of Rule 11(f) of the

14    Federal Rules of Criminal Procedure and Rule 410 of the

15    Federal Rules of Evidence.  The defendant may be prosecuted

16    for all federal offenses including perjury and false

17    statements related to the plea agreement.

18          Apart from being advised of the guidelines related

19    to Mr.~Engram's case, there has been no promise or

20    representation whatsoever made to the defendant about what

21    punishment the Court might impose if it accepts Mr.~Engram's

22    plea of guilty.  This agreement reflects all promises,

23    agreements, and understandings between the defendant and the

24    United States Attorney.  The defendant's agreement is

25    knowing, free, and voluntary; not the product of force,

18

1  threat, or coercion.  The defendant is pleading guilty

2  because he is in fact guilty.

3           The government would add that in the plea

4  supplement, it has no objection to the defendant receiving a

5  reduction for acceptance of responsibility.  If the

6  defendant's advisory sentencing guideline offense level is

7  16 or above, the government agrees that he is eligible for

8  the three-point reduction for acceptance of responsibility.

9  And otherwise, there is no agreement as to the sentence

10 imposed.

11          **THE COURT:**  Thank you.

12          Mr.~Engram --

13          **THE DEFENDANT:**  Yes.

14          **THE COURT:**  -- having heard the terms of the plea

15 agreement that you entered into with the government, did the

16 government's attorney accurately state those terms as you

17 understand them to be?

18          **THE DEFENDANT:**  Yes, Your Honor.

19          **THE COURT:**  And do you indeed understand all of the

20 terms of the plea documents?

21          **THE DEFENDANT:**  Yes, Your Honor.

22          **THE COURT:**  The government's attorney mentioned

23 that you-all agreed that you qualify for acceptance of

24 responsibility.  Did you hear that part?

25          **THE DEFENDANT:**  Yes, Your Honor.

1       **THE COURT:**  Do you understand that the Court is not

2  bound to accept that, if the Court rejects the entirety of

3  the plea agreement?

4       **THE DEFENDANT:**  Yes, Your Honor.

5       **THE COURT:**  Did you have the opportunity to read

6  the plea documents and discuss them with your attorney?

7       **THE DEFENDANT:**  Yes, Your Honor.

8       **THE COURT:**  Now, I was provided a copy of those

9  plea documents before this hearing, Mr.~Engram, and I did

10  review them.  They show a signature --

11       **THE DEFENDANT:**  Yes, ma'am.

12       **THE COURT:**  They show a signature on them that is

13  represented to be yours.  So I would like you to confirm

14  that when you -- the signature that is shown to be yours is

15  indeed where you signed the plea agreement and the plea

16  supplement?

17       **THE DEFENDANT:**  Yes, Your Honor.

18       **THE COURT:**  Ms.~Nordstrom, can you confirm that

19  before Mr.~Engram signed the plea documents that you

20  discussed their terms with him as well as reviewed the facts

21  of the case and the government's evidence with him?

22       **MS. NORDSTROM:**  I did, Your Honor.

23       **THE COURT:**  Do you believe Mr.~Engram will be

24  entering into this plea freely and voluntarily with full

25  knowledge of the charges and the consequences of the guilty

20

1    plea?

2            **MS. NORDSTROM:**  I do, Your Honor.

3            **THE COURT:**  The plea agreement will be filed; the

4    plea supplement will be filed under seal.

5            Mr.~Engram, do you understand that the offense in

6    Count 2 is a felony?

7            **THE DEFENDANT:**  Yes, Your Honor.

8            **THE COURT:**  Do you understand that if you plead

9    guilty to that felony and the Court accepts your plea, I'm

10   going to enter a judgment of guilty against you with respect

11   to that felony?  Now, that judgment may deprive you of

12   certain civil rights such as the right to vote, the right to

13   hold public office, the right to sit on a jury, and very

14   important, as you know, the right to possess any kind of

15   firearm whatsoever.  Do you understand that?

16           **THE DEFENDANT:**  Yes, Your Honor.

17           **THE COURT:**  To the extent that you do plead guilty,

18   Mr.~Engram, and I sentence you, I'm going to be guided by

19   the Sentencing Commission's guidelines.  Those guidelines

20   are only advisory, so the Court is not bound to follow them

21   if the Court chooses not to do so.  Have you and your

22   attorney discussed how these sentencing guidelines might

23   apply to your case?

24           **THE DEFENDANT:**  Yes, Your Honor.

25           **THE COURT:**  Do you understand the Court won't be

1   able to determine your guideline sentence until after a

2   Presentence Report has been prepared and you and your

3   attorney as well as the government's attorney have had the

4   opportunity to review it and decide if you have any

5   objections to the reported facts or the application of the

6   guidelines as recommended by the probation officer?

7           **THE DEFENDANT:**  Yes, Your Honor.

8           **THE COURT:**  Do you understand that after your

9   guideline range has been determined, the Court has the

10  authority in some circumstances to depart upward or downward

11  from the guidelines, meaning the Court may impose a sentence

12  that is more severe or less severe than what is called for

13  by the guidelines?

14         **THE DEFENDANT:**  Yes, Your Honor.

15         **THE COURT:**  Do you understand that regardless of

16  the guidelines range, the Court has the authority to

17  sentence you up to the maximum time allowed by law?

18         **THE DEFENDANT:**  Yes, Your Honor.

19         **THE COURT:**  Do you understand as well that if you

20  are sentenced to serve time in prison, you will not be

21  released on parole because parole has been abolished in this

22  federal court?

23         **THE DEFENDANT:**  Yes, Your Honor.

24         **THE COURT:**  I have one final set of questions for

25  you, Mr.~Engram, before I ask for your plea.  These

22

1    questions concern your constitutional rights, and in

2    particular your giving up of these rights if you plead

3    guilty here today.

4         First, do you understand that you have the right to

5    plead not guilty?

6         **THE DEFENDANT:**  Yes, Your Honor.

7         **THE COURT:**  Do you understand that under the

8    Constitution and the laws of this country, you're entitled

9    to a speedy and public trial by jury on the charges against

10   you?

11        **THE DEFENDANT:**  Yes, Your Honor.

12        **THE COURT:**  Do you understand that if you had a

13   trial, you would be presumed innocent and the government

14   would have to come into court and prove beyond a reasonable

15   doubt your guilt?

16        **THE DEFENDANT:**  Yes, Your Honor.

17        **THE COURT:**  Do you understand that if you had a

18   trial, the government's witnesses would have to come into

19   court and testify in your presence, that you could

20   cross-examine through your attorney the government's

21   witnesses, and that your attorney could also call witnesses

22   to testify on your behalf?

23        **THE DEFENDANT:**  Yes, Your Honor.

24        **THE COURT:**  Do you understand that if you had a

25   trial, you would have the right to require that witnesses

23

1  come to court and testify?

2          **THE DEFENDANT:**  Yes, Your Honor.

3          **THE COURT:**  Are you also aware that if you had a

4  trial, you would have the right to testify on your own

5  defense but if you chose not to testify, the fact that you

6  did not testify could not be used against you?

7          **THE DEFENDANT:**  Yes, Your Honor.

8          **THE COURT:**  Do you understand that if you had a

9  trial and you were convicted, you would have the right to

10  appeal your conviction and sentence?

11          Would you like me to repeat that one, Mr.~Engram?

12          Looks like Mr.~Engram -- okay, I'm sorry,

13  Mr.~Engram, your screen was frozen for a minute there.  We

14  couldn't hear you.  So I'm going to ask you that question

15  again.

16          Do you understand if you had a trial, you would

17  have the right to appeal your conviction and your sentence?

18          **THE DEFENDANT:**  Yes, Your Honor.

19          **THE COURT:**  Finally, Mr.~Engram, based on all the

20  questions that I've asked you, do you understand that if you

21  plead guilty and the Court accepts your plea, there is not

22  going to be a trial and I'm going to enter a judgment of

23  guilty and then sentence you after I've considered a

24  Presentence Report?

25          **THE DEFENDANT:**  Yes, Your Honor.

24

1        **THE COURT:**  Do you have any questions at all about

2    your constitutional rights or giving up your constitutional

3    rights?

4        **THE DEFENDANT:**  No, Your Honor.

5        **THE COURT:**  Has your attorney specifically

6    discussed giving up your constitutional rights with you?

7        **THE DEFENDANT:**  Yes, Your Honor.

8        **THE COURT:**  Having discussed giving up these rights

9    with your attorney, is it still your wish to plead guilty to

10   Count 2?

11       **THE DEFENDANT:**  Yes, Your Honor.

12       **THE COURT:**  Mr.~Engram, I'm about to ask you for

13   your plea.  If you have any questions or concerns, now would

14   be the time to raise them.  Do you have any questions or

15   concerns at this point?

16       **THE DEFENDANT:**  No, Your Honor.

17       **THE COURT:**  In the matter of the United States of

18   America versus Elijah Raymond Engram, how do you plead to

19   Count 2 of the indictment?

20       **THE DEFENDANT:**  Guilty, Your Honor.

21       **THE COURT:**  It is the finding of this Court then in

22   this case, Mr.~Engram, that you're capable and competent of

23   entering an informed plea, that you're aware of the nature

24   of the charges and the consequences of the guilty plea, and

25   that your guilty plea is knowing, voluntary, and contains

1  each of the essential elements of the offense, and it is not

2  the result of force, threats, or promises.

3        The Court therefore accepts your plea, Mr.~Engram.

4  You are now adjudged guilty of the offense in Count 2.  The

5  Court accepts as well your plea agreement that you entered

6  into with the government.

7        What will happen moving forward, Mr.~Engram, is the

8  probation office will prepare a Presentence Report at the

9  Court's request.  You're going to be questioned by the

10  probation officer for purposes of that report.  I encourage

11  you to have your attorney present while you are being

12  questioned by the probation officer.  I also encourage you

13  to answer all of the questions asked of you honestly because

14  your answers will be incorporated into the Presentence

15  Report, and I read every single word of that Presentence

16  Report in determining what I believe is an appropriate

17  sentence in your case.

18        I'm going to set your sentencing hearing for

19  January 19, 2022.  It is set that far out, Mr.~Engram,

20  because it will allow the probation officer time to prepare

21  the Presentence Report.  I've already mentioned how

22  important that document is.  Now, of course, there could be

23  some occasion when it may be ready earlier so that the Court

24  could have your sentencing hearing earlier.  But if that

25  does happen, then we would give notice to your attorney and

1   your attorney could give notice to you.  But for now, your

2   sentencing will be set for January 19, 2022.

3           At your sentencing hearing, Mr.~Engram, you may

4   make -- and in fact, I will specifically invite to you to

5   make a statement on your own behalf.  You are not required

6   to speak at your hearing but I am always very interested in

7   anything that you believe I should take into account before

8   I sentence you.  Of course, your attorney will have the

9   opportunity to speak on your behalf as well.

10          One thing that you may do, if you wish, Mr.~Engram,

11  is have persons submit character reference letters on your

12  behalf.  It is not a requirement.  So if you don't ask

13  persons to write letters on your behalf, it will in no way

14  affect how the Court sentences you.  However, if you would

15  like persons to submit letters on your behalf, please go

16  ahead and ask them to write those letters as early as

17  possible so that they could be provided to your attorney and

18  your attorney could file them on the docket in your case to

19  make sure that I see them and read them before your

20  sentencing hearing.  They can be from anyone you wish:

21  Friends, family, people in your community, people in your

22  church, people you've worked for, anyone at all.  But it is

23  entirely your choice.  Again, it is not a requirement.

24          So sentencing is January 19, 2022.  There will be

25  some presentencing deadlines that will be set and included

1  in the order setting sentencing.

2          I wanted to just ask one last question, or maybe

3  more than one question about your current situation,

4  Mr.~Engram.  Initially, I understood that you were out on

5  bond in this federal case.  But I understand now that there

6  is a pending state revocation matter based on your arrest in

7  this case.  And that's the reason that you're in custody

8  now.  Is that correct?

9          **THE DEFENDANT:**  Yes, Your Honor.

10         **THE COURT:**  Do you know, Mr.~Engram, when your

11 revocation hearing -- your state court revocation hearing

12 is set?

13         **THE DEFENDANT:**  No, Your Honor, I do not.  I have

14 no information regarding this revocation hearing whatsoever.

15         **THE COURT:**  Okay, I mention that only because to

16 the extent that this Court, the magistrate judge that you

17 appeared in front of for your initial appearance and/or

18 arraignment, had set that bond in this federal court for

19 you.  Of course, you're in custody now, so the Court -- this

20 Court can't do anything about that.  But if you find out

21 before your sentencing hearing that you had that revocation

22 hearing and it goes in your favor, then your attorney can

23 ask this Court to release you based upon the bond that was

24 set by the magistrate judge initially.  Of course, if your

25 revocation hearing is not decided before your sentencing,

28

1    then you will remain in custody until your sentencing

2    hearing.

3              Do you understand what I've said?

4              **THE DEFENDANT:**  Your Honor, could you repeat that

5    for me?  It was kind of fluttering a little bit.

6              **THE COURT:**  Sure.  The short of it is this Court

7    initially set a bond for you such that you were not in

8    custody.  You ended up being taken back into custody by

9    state authorities, not this federal court, because of the

10   revocation matter.  If that revocation matter is resolved in

11   your favor before your sentencing hearing, then you can have

12   your attorney to ask for your release pending sentencing

13   based upon this Court's initial finding that you could stay

14   out on a bond.  Is that clear?  Is that better?

15             **THE DEFENDANT:**  Yes, Your Honor.

16             **THE COURT:**  Okay.  All right, then.  Is there

17   anything further from anyone?

18             **MS. ADDISON:**  No, Your Honor, not from the

19   government.

20             **MS. NORDSTROM:**  Nothing from the defense, Your

21   Honor.

22             **THE COURT:**  All right.  Hearing nothing, then,

23   Mr.~Engram, I will see you -- if you're not released on your

24   revocation matter, I will see you on January -- what did I

25   say -- 19, 2022.  That is a Wednesday.

29

1          This matter then is adjourned.  You are remanded.

2          (Recessed:  9:50 a.m.)

3                         CERTIFICATE

4          I, Brenda D. Blackburn, Federal Official Court

5    Reporter, in and for the United States District Court for

6    the Northern District of Mississippi, do hereby certify that

7    pursuant to Section 753, Title 28, United States Code, that

8    the foregoing 28 pages are a true and correct transcript of

9    the stenographically reported proceedings held in the

10   above-entitled matter and that the transcript page format is

11   in conformance with the regulations of the Judicial

12   Conference of the United States.

13          Witness my hand, this 29th day of September, 2021.

14

15              /S/BRENDA D. BLACKBURN
                BRENDA D. BLACKBURN, RPR, CCR NO. 1087
16              FEDERAL OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25